<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SHAKHZOD SHOKIRJONIY, | : |
| Plaintiff, | : Case No. 3:18-cv-8904-BRM-DEA |
| v. | : |
|  | : **OPINION** |
| CITY OF CLINTON TOWNSHIP, *et al.*, | : |
| Defendants. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Jonathan Danberry's ("Danberry") Motion to Dismiss Plaintiff Shakhzon Shokirjoniy's ("Shokirjoniy") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 32.) Shokirjoniy opposes the Motion. (ECF No. 34.) Having reviewed the filings submitted in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons below, Danberry's Motion to Dismiss is **GRANTED**.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

   **A. Factual Background**

This civil-rights action arises out of a traffic stop involving Shokirjoniy by police officers in Clinton Township ("Clinton"), a municipality located in Hunterdon County, New Jersey, his detention by police, and later encounters with law-enforcement officials. (Am. Compl. (ECF No. 30) ¶¶ 10-27, 30-52.) However, this Motion was filed by Defendant Jonathan Danberry, a police officer from the neighboring municipality of High Bridge, New Jersey. (ECF No. 30 ¶¶ 7, 14.) Therefore, the Court will recount only those events or allegations pertaining to Danberry.

Shokirjoniy is a resident of Miamisburg, a city in Montgomery County, Ohio. (*Id.* ¶ 1.) Danberry is a police officer for the High Bridge Police Department ("High Bridge Police"). (*Id.* ¶ 7.) Defendant Sgt. Andy McCluskey ("McCluskey") is a police officer with the Clinton Township Police Department ("Clinton Police"). (*Id.* ¶ 3.) Defendants Joe Sangiovanni ("Sangiovanni") and Defendant Peter Schlesier ("Schlesier") are police officers with the Clinton Police Department. (*Id.* ¶¶ 4, 5.)

Early in the morning of July 21, 2017, Shokirjoniy was stopped by Clinton police officers who were parked on Route 31 in front of a Speed Way gas station in such a way that Plaintiff could not enter the station. (*Id.* ¶ 10.) The police officers may have parked there because they had pulled over another car. (*Id.* ¶ 12.) After Shokirjoniy made a U-turn to go around the police car,

---

[1] For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

2

McCloskey pulled over Shokirjoniy's car. (*Id.*) Danberry and Schlesier walked over to Shokirjoniy's car. (*Id.* ¶ 14.)

The officers asked Shokirjoniy where he was coming from and where he was going. (*Id.* ¶ 14.) Shokirjoniy told the officers he was coming from "across seas" and that he was returning home to Ohio. (*Id.*) At some point, one of the officers told Shokirjoniy one of his brake lights was out. (*Id.* ¶ 15.) After asking for and receiving Shokirjoniy's driver's license, the officers took the license back to their cruiser. (*Id.* ¶ 16.) On returning to Shokirjoniy's car, the officers told Shokirjoniy his New York license was expired. (*Id.* ¶ 17.) Shokirjoniy responded that "his fines had been paid in New York." (*Id.* ¶ 18.) The officers then asked Shokirjoniy if there were any illegal substances in his vehicle. (*Id.* ¶ 19.) Schlesier "stated there was [sic] drugs in the vehicle," and Shokirjoniy admitted he had marijuana in the car. (*Id.* ¶¶ 20, 21.) The officers searched Shokirjoniy's vehicle. (*Id.* ¶ 21.) Shokirjoniy says both that he did not consent to the search and that he eventually did consent to the search. (*Id.* ¶¶ 22, 23.) "McCloskey had [Shokirjoniy] sign a waiver for the search." (*Id.* ¶ 24.) After roughly thirty to forty minutes, the officers took Shokirjoniy to "the station" and placed him, handcuffed, in what he calls a camera room. (*Id.* ¶ 25.) Shokirjoniy was in handcuffs for an additional twenty to thirty minutes. (*Id.* ¶ 26.) Eventually, Shokirjoniy was fingerprinted, photographed, and given three tickets: one for an illegal lane change, one for a broken middle taillight, and one for possession of marijuana. (*Id.* ¶ 27.) Confusingly, Shokirjoniy then alleges that, at the conclusion of events at the police station, "the ticket never given at the initial stop constituting [sic] racketeering and ticket fixing scheme." (*Id.* ¶ 28.) When Shokirjoniy was taken back to his car, "the officers refused to allow him to see what break [sic] light was out because they knew you don't need a middle stop light to operate an automobile." (*Id.* ¶ 29.)

3

While the Second Amended Complaint includes allegations involving another encounter with McCloskey when Shokirjoniy returned to New Jersey on January 19, 2018, for trial on his three tickets and he prefaces his allegations with a sentence that this encounter involved the "same defendants," he mentions only the names of McCloskey and Sangiovanni as officers involved. (*See id.* ¶¶ 30-51.) Shokirjoniy also alleges several agents from the Federal Bureau of Investigation, at the request of Defendant Eric Perkins, identified as "a City Judge with the City of Clinton," to "shake" down Shokirjoniy because Plaintiff brought this litigation. (*Id.* ¶¶ 9, 52.) Shokirjoniy does not expressly name Danberry as having any role in any subsequent events.

### B. Procedural History

On May 7, 2018, Shokirjoniy filed a Complaint alleging four counts: (1) against McCloskey for violating his rights under the Fourth Amendment of the U.S. Constitution by searching his person and vehicle during the initial July 2017 traffic stop without probable cause; (2) against McCloskey and the other officers for chilling his right to free speech under the First Amendment during his January 2018 encounter with Clinton police officers; (3) against McCloskey, Schlesier, Danberry and other unnamed officers for violating his rights under the Fourth Amendment of the U.S. Constitution for unreasonably detaining him after the initial July 2017 traffic stop without probable cause.[2] (ECF No. 1 ¶¶ 52-78.)

---

[2] The Complaint includes a fourth count, but it is labeled as applying to McCloskey and other officers for events alleged regarding the January 2018 encounter, but the allegations contained in this count twice state that McCloskey lacked probable cause to order Plaintiff to exit his vehicle during the July 2017 encounter, while also stating that Plaintiff suffered damages from "the false imprisonment, and use of force on January 19, 2018. (*See* ECF No. 1 ¶¶ 76-78.) Confusingly, this count also appears to allege "evidence from the two Police Departments Pattern of Practice sustains pattern of practice, use of force, false imprisonment, false arrest illegal detention, racial indifference, malice, spite and ill will." (*Id.* ¶ 78.)

4

On July 18, 2018, Shokirjoniy filed an Amended Complaint to add counts alleging violations of rights pursuant to 42 U.S.C. § 1983, as well as claims under New Jersey's Tort Claims Act, the New Jersey Legal Malpractice Act, and the New Jersey Unfair Practices Act. (Am. Compl. (ECF No. 8).) However, only two further counts are listed in the Amended Complaint: Count V, alleging a conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985; and Count VI's alleged violation of 18 U.S.C. § 241. (*Id.* ¶¶ 95, 96.)

Defendants McCloskey, Sangiovanni, Schlesier and the City of Clinton filed an Answer on January 23, 2019. (ECF No. 14.) Danberry applied for a Clerk's order to extend the time to file an Answer, an application that was denied as out of time. (*See* ECF No. 16, Dkt. entry for February 5, 2019.) Danberry filed a Motion to Dismiss on February 7, 2019. (ECF No. 18.) On March 14, 2019, Shokirjoniy filed a Motion for Summary Judgment. (ECF No. 20.) Before that Motion could be fully briefed, Shokirjoniy filed a Motion to Amend the Complaint. (ECF No. 26.) Following an on-the-record status conference with the parties, the Court granted the Motion to Amend and terminated both Danberry's Motion to Dismiss and Shokirjoniy's Motion for Summary Judgment. (ECF No. 29.)

Shokirjoniy filed the Second Amended Complaint on August 19, 2019. (ECF No. 30.) The Second Amended Complaint adds a malicious prosecution claim, a count referencing the Eleventh Amendment stating that New Jersey can be sued by a resident of Ohio, and another search-and-seizure count, this time involving a flashlight. (*Id.* ¶¶ 107-12.)

On September 13, 2019 Danberry filed this Motion. (ECF No. 32.) Shokirjoniy filed his opposition on September 23, 2019. (ECF No. 34.) That same day, Shokirjoniy moved to file a Third Amended Complaint. (ECF No. 35.) This Motion to Amend was opposed by McCloskey, Sangiovanni, Schlesier, and the City of Clinton. (ECF No. 37.) At an on-the-record status

conference with the parties, the Court denied that Motion. (*See* ECF No. 40.) Danberry did not file a Reply to Shokirjoniy's opposition.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires that the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be

pleaded; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint.'" *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

### III. DECISION

Danberry argues the Second Amended Complaint should be dismissed because it does not allege any legally viable claims against him. (Def.'s Br. in Sup. of Mot. (ECF No. 32-1) at 6.) More specifically, Danberry argues the Second Amended Complaint makes "blanket statements that contain no specificity regarding non-descript traffic stops on July 21, 2017 and January 19,

7

2018." (*Id.*) More specifically, Danberry contends Shokirjoniy alleges a lack of probable cause for the traffic stop, for a search of his vehicle, and for his detention to and at the police station, the subject of Counts I, III[3] and IV[4], but his Second Amended Complaint "is completely devoid of any reference, factual basis or otherwise, relating to or even potentially relating to, violations of the Fourth Amendment." (*Id.* at 9.)

Danberry asserts that two claims, both confusingly labeled as Count II and alleging violation of Shokirjoniy's free-speech rights, fail to state how those rights were violated, nor does it claim what free speech Shokirjoniy was prevented from engaging or participating in. (*Id.* at 9-10.)

Finally, Danberry argues the nonspecific Count VIII, again claiming unreasonable search and seizure but referencing the Eleventh Amendment, should be dismissed because it contains no specific allegations against him. (*Id.* at 10.)

Shokirjoniy counters that the Motion should be denied because the Second Amended Complaint adequately pleads that Danberry "watch and allowed" Shokirjoniy's Constitutional rights be violated where Shokirjoniy "had committed no infraction of law in the State of New Jersey, then had false and malicious charges against him in retaliation after the assault." (Pl.'s Opp. to Mot. (ECCF no. 34) ¶ 10.) Shokirjoniy also states that Count VIII specifically relates to

---

[3] The Second Amended Complaint lists two Count III headings: the first referencing the January 19, 2018 traffic stop and the July 2017 traffic stop, (ECF No. 30 ¶¶ 67-75) and the second referencing only the January 2018 traffic stop. (*Id.* ¶¶ 81-90.) However, the allegations contained in the first Count III contain references only to the July 2017 traffic stop; while the allegations contained in the second Count III references both traffic stops. (*Id.*)

[4] The Second Count IV also includes what is labeled a "Joint application for entry of consent decree." (*Id.* ¶¶ 93-104.) As this section does not reference Danberry, the Court will not address or consider this section for the purposes of deciding this Motion.

Danberry, as the "third amended complaint [] details the video of the apprehension and fully sustains that Officer Danberry took a tactical flashlight" from Shokirjoniy. (*Id.* ¶ 15.)

The Court observes the Second Amended Complaint is silent on whether Danberry, or any of the Defendants, is being sued individually or in his official capacity, or both. Rather, the Second Amended Complaint alleges only that Danberry "was acting under color of state law and in the course and scope of his employment as a law enforcement officer . . . at all times material." (ECF No. 30 ¶ 7.)

To state a claim under § 1983, a plaintiff must establish that (1) the conduct deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States and (2) the conduct challenged was committed by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).

"Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State. . . . The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) ("A suit against state officials in their official capacities is not a suit against the officials but rather is a suit against the officials' offices and, thus, is no different from a suit against the State itself.").) Generally, a suit by private parties seeking to impose a liability that must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state or by a federal statute. *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The Eleventh Amendment also bars suits against state officials in their official capacity. *See Melo v. Hafer (Melo I)*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, *Hafer v. Melo (Melo II)* 502 U.S. 21 (1991) (citing *Kentucky v. Graham*,

9

473 U.S. 159, 165–68 (1985)). Municipal police departments are arms of the local municipality and may not be sued under § 1983. *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004). This immunity extends to state officials, including local police officers, acting in their official capacity. *Smith*, 908 F. Supp. at 563-64 (citing *Will*, 491 U.S. at 71, 109 S. Ct. 2304 (internal citation omitted). Accordingly, to the extent Danberry was sued in his official capacity, the Motion to Dismiss is **GRANTED**.

The Eleventh Amendment does not bar suits for damages against state officials in their individual or personal capacity, as such actions seek recovery against the personal assets of a defendant and a state is not the real party in interest. *Melo I*, 912 F.2d at 635 (citation omitted). The Court infers from the Second Amended Complaint that Shokirjoniy seeks damages against Danberry in his individual capacity. For instance, the Second Amended Complaint alleges Danberry was present at the July 2017 traffic stop, and while Shokirjoniy in opposing the Motion does not dispute Danberry's claim that there are no specific acts allegedly performed by him, Shokirjoniy does argue Danberry was present when Shokirjoniy's rights were allegedly violated and that he failed to stop those violations. Therefore, the Court concludes Shokirjoniy's suit "seek[s] to impose individual liability upon a government officer for action taken under color of state law." *Melo II*, 502 U.S. at 25. Because the Eleventh Amendment only bars suits against state officials in their official capacities, Shokirjoniy may sue Danberry in his individual capacity. *Garden State Elec. Inspection Servs., Inc. v. Levin*, 144 F. App'x 247, 251 (3d Cir. 2005) (finding Eleventh Amendment immunity does not bar a plaintiff from bringing suit in federal court against government officials sued in their individual capacity); *Goodall–Gaillard v. N.J. Dep't of Corr.*, No. 09–965, 2014 WL 2872086, at *26 (D.N.J. June 24, 2014); *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 281 (D.N.J. 2013) (finding a state official sued in his individual capacity "does not partake

[in] the state's Eleventh Amendment sovereign immunity"); *Kamienski v. Att'y Gen. for N.J.*, No. 11–3056, 2012 WL 4033765, at *4 (D.N.J. Sept. 12, 2012) ("The Eleventh Amendment does not preclude suit against private individuals.").

Therefore, to the extent Danberry was sued in his personal capacity, the Court concludes it has subject-matter jurisdiction over this litigation. As a result, the Court now must determine whether the substance of Shokirjoniy's Second Amended Complaint is sufficiently pleaded.

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

Danberry argues the Second Amended Complaint should be dismissed because it alleges no specific acts performed by him that allegedly violated Shokirjoniy's rights. The Court agrees.

To begin, it is clear Shokirjoniy's Second Amended Complaint fails *Twombly's* pleading requirements. Pursuant to *Twombly*, a pleading "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, but the Court is "not bound to accept as true" legal conclusions couched as factual allegations. *Papasan*, 478 U.S. at 286.

In Counts I, III and IV, Shokirjoniy brings claims of unreasonable search and seizure. The allegations in these counts are confusing. For example, they contain allegations pertaining to events surrounding the July 2017 traffic stop, but the headings for Counts III and IV indicate these claims are concerned only with the January 2018 encounter or both the July 2017 and January 2018 encounters. The Second Amended Complaint expressly alleges that Danberry was present at the July 2017 traffic stop. He is not identified as being among the officers at the January 2018 encounter.

It is clear "stopping a car and detaining its occupants is a seizure under the Fourth Amendment." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citing *United States v. Hensley,* 469 U.S. 221, 226, 105 S. Ct. 675, 678, 83 L.Ed.2d 604 (1985). However, a stop to check

a driver's license and registration is constitutional when it is based on an "articulable and reasonable suspicion that . . . either the vehicle or an occupant" has violated the law. *Johnson*, 63 F.3d at 245 (citing *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L.Ed.2d 660 (1979). In other words, this articulable and reasonable suspicion may equate with probable cause.

The Third Circuit has stated "the existence of probable cause in a section 1983 action is a question of fact." *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) (citing *Groman v. Township of Manalapan,* 47 F.3d 628, 635 (3d Cir. 1995). But, Shokirjoniy has not adequately pleaded facts that could lead the Court to conclude any officer's search of Shokirjoniy's car lacked probable cause. Courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Here, Shokirjoniy provides exactly what *Baraka* and *Papasan* warn against, the conclusory statement that the search of his vehicle carried out by the police officer lacked probable cause. This statement is unsupported by any facts.

Rather, Shokirjoniy alleges he was making a U-turn around a police car in the July 2017 traffic stop and was given a ticket for an unsafe lane change. Shokirjoniy also admitted when asked by the officers that there was marijuana in his vehicle and that he consented to the search. The Court does not interpret this as a showing of *Johnson*'s "articulable and reasonable suspicion" of a violation of the law that demonstrates the alleged search and seizure was reasonable. However, in the absence of any allegations as to what made the July 2017 search and seizure unreasonable,

the Court cannot conclude Shokirjoniy has sufficiently pleaded facts to support an allegation of unreasonable search and seizure.

Furthermore, Shokirjoniy does not claim Danberry was "'personally involved' in these incidents, which is required to make out a viable claim under § 1983." *Keating v. Pittston City*, 446 F. App'x 492, 495 (3d Cir. 2011) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988)). Accordingly, Danberry's Motion to Dismiss Counts I, III and IV is **GRANTED.**

In both claims labeled as Count II, Shokirjoniy alleges officers illegally retaliated against him in violation of his free speech rights under the First Amendment. "[T]o plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising [her] constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *O'Donnell v. Knott*, 283 F. Supp. 3d 286, 296 (E.D. Pa. 2017) (citing *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)).

Shokirjoniy alleges he questioned whether he had to leave private premises and that "McCloskey and the other Officers" retaliated against him by detaining him, assaulting him and destroying his vehicle." (ECF No. 30 ¶ 76.) His factual allegations point to the January 2018 encounter, as there is no allegation in his recitation of the events of the July 2017 traffic stop that he was asked then to leave private premises nor that he was assaulted. Here, even were the Court included to conclude Shokirjoniy had adequately pleaded that he was engaged in constitutionally protected conduct that was adequately linked to the retaliatory conduct alleged, namely arrest, the Court cannot conclude that Shokirjoniy has adequately pleaded that Danberry participated in this activity. The Second Amended Complaint only names Danberry when it lists the roster of police officers who were present at the July 2017 traffic stop, and it lists those personally participating in

the January 2018 encounter as including only McCloskey and Sangiovanni. That said, Shokirjoniy's opposition to this Motion states that Danberry "watched and allowed" the alleged events. Personal involvement in an alleged § 1983 action can be shown through allegations of actual knowledge and acquiescence of the violations, but such allegations must be made with appropriate particularity. *Rode*, 845 F.2d at 1207–08. This Shokirjoniy has not done. There are no facts presented regarding Danberry, except in paragraph 14, noting that Danberry and Schlesier approached Shokirjoniy's vehicle. Accordingly, Danberry's Motion to Dismiss both Count IIs is **GRANTED**

Counts V (conspiracy involving events on April 25, 2018), VI (malicious prosecution), and VII (Eleventh Amendment grounds) do not implicate Danberry. And while Shokirjoniy argues that Count VIII specifically relates to Danberry via the "third amended complaint," there is no third amended complaint as Plaintiff's Motion to Amend the Complaint for the filing of a third amended company was denied. Accordingly, Danberry's Motion to Dismiss is **GRANTED**.

  **IV. CONCLUSION**

For the reasons set forth above, Danberry's Motion to Dismiss is **GRANTED**. An appropriate Order will follow.

**Date: May 29, 2020**            */s/ Brian R. Martinotti*
                          **HON. BRIAN R. MARTINOTTI**
                          **UNITED STATES DISTRICT JUDGE**